IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ERIC EUGENE WRAY,       )
                        )    2: 12-cv-00980-PK
        Plaintiff,      )
                        )
    v.                  )
                        )
OREGON DEPARTMENT OF    )    ORDER
CORRECTIONS, et al.,    )
                        )
        Defendants.     )

BROWN, District Judge.

Plaintiff has filed an Amended Motion for Temporary Restraining Order and Preliminary Injunction [10]. He alleges prison staff at the Eastern Oregon Correctional Institution ("E.O.C.I.") altered and deleted vital medical and mental health information from his records that could endanger his life. Specifically, he alleges notations in his file documenting his bee allergy and his housing requirements, were deleted from his records.

1 - ORDER

In addition, plaintiff alleges prison staff are failing to protect him from harm by other inmates. Specifically, he alleges a fellow inmate, Mario Aguilar, was recently transferred to E.O.C.I. from Snake River Correctional Institution ("S.R.C.I."). He contends Mario is a leader, a "shot caller", in a Mexican gang and has ties to the gang member responsible for sexually assaulting plaintiff when he was an inmate at S.R.C.I. Plaintiff alleges Mario and "John Doe", another gang leader and former S.R.C.I inmate, are harassing him and trying to get other gang members to target him.

Plaintiff advises the Court that as of July 18, 2012, Mario Aquilar, SID# 13573056 resided in the B1 housing unit, bed 14A.[1] Plaintiff's Reply [24] at 12. He does not know John Doe's real name and insists prison staff refuse to "sit down with [him] to match faces with names." Plaintiff contends that as a result of the prison's "refus[al] to do anything to protect [him]," his mental health has deteriorated and he has lost 30 pounds in four months because he has not been eating breakfast and only eating lunch and dinner for 2-3 minutes in an effort to avoid Mario and John Doe. Amended Motion for TRO and Preliminary Injunction [10]

---

[1] In their most recent declaration, defendants advise the Court that their earlier representation that Officer Mitchell could not find anyone fitting plaintiff's description of Mario was incorrect and should not be relied on by the Court. Declaration [36] at 2.

2 - ORDER

at 3 & 6-7. He also asserts that his health is at risk even from a perceived threat of danger. Plaintiff's Reply [24] at 12.

Plaintiff seeks an Order from the Court: (1) directing the Oregon Department of Corrections to transfer Mario and John Doe out of E.O.C.I.; (2) directing the Oregon Department of Corrections to "place the information [related to his bee allergy and mental health housing needs] that was removed in exhibit 4 back as it originally was and file proof with the Court and plaintiff as such"; (3) directing the Oregon Department of Corrections to provide plaintiff with a special diet arranged by his prison doctor and containing no red meat for six months; and (4) granting such other relief and damages as the Court feels justified. Id. at 14. According to plaintiff, segregating him or transferring him out of E.O.C.I. is not an option due to his mental health issues. Moreover, he insists needs a special diet because he does not eat meat and the vegetarian option, while adequate to maintain weight, will not allow him to regain the weight he lost. Plaintiff's Reply [24] at 17.

In response, defendants maintain that plaintiff's Health Status Report and Health Services Face sheet indicate that he has a bee allergy and special housing requirements. In addition, defendants argue even if these notations were not in plaintiff's records, he cannot show their absence would result in a "sufficiently severe deprivation" because: (1) in the event

3 - ORDER

plaintiff had a reaction to a bee sting, he would receive immediate medical attention; and (2) "there is no indication defendants plan to move him from his cell or transfer someone new into his cell, or that doing so would result in harm." Defendants' Response [18] at 4-5. Finally, defendants assert plaintiff has presented no evidence that any official purposefully, and with a culpable mind set, removed information from his records. Id. at 6.

With regard to plaintiff's failure to protect allegations, defendants acknowledge that several months ago he notified Officer Mitchell that he recognized an inmate named Mario from S.R.C.I., that Mario was an associate of the inmate who raped him, and that he was worried about being recognized. Declaration [36] at 2. Defendants contend Officer Mitchell looked into the matter, but could not determine that a threat existed and took no action. Id. According to defendants,

> [a]side from the complaint a number of months ago about Inmate Aguilar, plaintiff has not presented concerns for his safety to staff at EOCI. Should plaintiff raise such concerns about Inmate Aguilar or any other inmate, staff will look into those concerns and take appropriate action. In addition, staff at EOCI will continue to monitor the situation and ensure plaintiff's safety to the best of their ability.

Id. Moreover, defendants state that plaintiff is under direct supervision of staff at meals and at other authorized activities. Finally, in addressing plaintiff's weight loss allegations, defendants report that he weighed 159 pounds at intake on December 28, 1999, that his own exhibit shows his weight is consistently

4 - ORDER

around 180 pounds, and that the most recent weight in his chart is 172 pounds taken on March 5, 2012.[2] According to defendants, even at 162 pounds, plaintiff cannot demonstrate malnutrition or that he is at "real and immediate" risk of harm. Defendants' Response [18] at 7-8.

To obtain preliminary injunctive relief in the Ninth Circuit, a party must meet one of two alternative tests.[3] Under the "traditional" standard, preliminary relief may be granted if the court finds: (1) the moving party will suffer irreparable injury if the preliminary relief is not granted; (2) the moving party has a likelihood of success on the merits; (3) the balance of potential harm favors the moving party; and 4) the advancement of the public interest favors granting injunctive relief. Burlington N.R.R. v. Department of Revenue, 934 F.2d 1064, 1084 (9th Cir. 1991).

Under the alternative test, the moving party may meet the burden by showing either (1) probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in the moving party's favor. Id.; Associated Gen. Contractors of Cal., Inc. v.

---

[2] Plaintiff contends his most recent weight of 162 pounds was taken on April 24, 2012.

[3] Notably, the standards for issuance of a temporary restraining order are at least as exacting as those for a preliminary injunction. Los Angeles Unified Sch. Dist. v. United States Dist. Court for the Cent. Dist. of Cal., 650 F.2d 1004, 1008 (9th Cir. 1981).

5 - ORDER

Coalition for Economic Equity, 950 F.2d 1401, 1410 (9th Cir. 1991), cert. denied, 503 U.S. 985 (1992). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." Prudential Real Estate Affiliates v. PPR Realty, Inc., 204 F.3d 867, 874 (9th Cir. 2000).

The Court takes seriously plaintiff's allegations. Nevertheless, its review of the record reveals plaintiff's institution records currently include notations documenting both his bee allergy and his special housing requirements due to mental health issues. Moreover, as defendants note, plaintiff did not include allegations related to the removal of these critical notations from his records in his Complaint. Therefore, he cannot demonstrate a likelihood of success on the merits. Winter v. Natural Res. Def. Council, Inc, 129 S.Ct. 365, 374 (2008)(plaintiff seeking preliminary injunction must demonstrate that he is likely to succeed on the merits).

Similarly, in light of defendants representations regarding plaintiff's failure to protect allegations, namely their assertions: (1) that they looked into plaintiff's claims regarding Mario and could not determine that a threat existed; (2) that plaintiff has not presented any recent concerns related to his safety; (3) that "[e]ach time plaintiff leaves the unit for meals, program assignments, recreation, or other authorized activities, he

6 - ORDER

is under the direct supervision of staff"; and (4) that "staff at EOCI will continue to monitor the situation and ensure plaintiff's safety to the best of their ability," the Court finds plaintiff has failed to demonstrate a likelihood of success on the merits on his failure to protect claims such that injunctive relief is warranted at this time. Id.

Plaintiff is also advised that ordinarily a preliminary injunction maintains the status quo pending a final decision on the merits. University of Texas v. Camenisch, 451 U.S. 390, 395 (1981). Here, plaintiff is asking the Court to alter the status quo by, among other things, issuing an Order directing the Oregon Department of Corrections to transfer Mario and John Doe out of E.O.C.I. and to provide plaintiff with a special diet. Such a "mandatory injunction," as it is known, is granted only in extraordinary circumstances. See LGS Architects, Inc. V. Concordia Homes of Nevada, 434 F.3d 1150, 1158 (9th Cir. 2006); Marlyn Nutraceuticals, Inc. v. Mucas Pharma GmbH & Co., 571 F.3d 873, 879 (9th Cir. 2009)(mandatory injunction, which goes beyond maintaining the status quo, is particularly disfavored).

///
///
///
///

7 - ORDER

## CONCLUSION

Based on the foregoing, plaintiff's Amended Motion for Temporary Restraining Order and Preliminary Injunction [10] is DENIED. In addition, plaintiff's Motion [17] asking the Court to rule on his motion for injunctive relief is DENIED as moot.

IT IS SO ORDERED.

DATED this 14th day of September, 2012.

_____
Anna J. Brown
United States District Judge

8 - ORDER